and we will hear first from Ms. Madison. May it please the court. My name is Ashley Madison and I have the pleasure of representing appellant John Carson in this appeal. Dr. Carson's state law failure to warrant claim is not expressly nor impliedly preempted by the Federal Insecticide, Fungicide and Rodenticide Act or FFRA because Georgia law is consistent if not parallel with FFRA's misbranding provision. In terms of the background of this case, this complaint was originally filed in the district court for the Southern District of Georgia and among the complaint claims were product design defect claims, negligence claims, strict liability, failure to warn and breach of implied warranties. After a motion for judgment on the pleadings was filed by the ruling was that certain of plaintiff's claims would remain and certain of plaintiff's claims would fail. This particular appeal has to do with count two which is the failure to warn claim. FFRA requires pesticide manufacturers to register their products with the EPA. The EPA enforces the use, sale and labeling of pesticides. The EPA makes registration determinations based on safety information and reviewing scientific data and then re-reviews and re-registers every 15 years. Now as the Ninth Circuit Court of Appeals pointed out recently in Hardeman v. Monsanto and that's 997 F3D 941, FFRA actually provides a very unique provision within the act and that provision states as follows, in no event shall registration of an article be construed as a defense for the commission of any offense under this chapter. What's important to note about this particular provision is that it is distinct in FFRA as opposed to many of the other acts that we're going to be talking about today and upon which Monsanto relies like the medical device amendments, the Poultry Inspection Act and others. So rather as the provision goes on to state, as long as no cancellation proceedings are in effect, registration is merely prima facie evidence that the pesticide is labeling and packaging comply with FFRA. Now this is subject to challenge or rebuttal. In other words, the act specifically rejects any sort of implied or expressed preemption and Bates goes one step further to discuss that and to flesh that out and we'll talk about that in a moment. But an EPA registered pesticide can be misbranded if the label does not contain adequate instructions for use or its label omits necessary warnings or cautionary statements. And to that end, manufacturers have a continuing obligation to seek approval for amendment to a label that does not contain necessary warnings or cautionary statements. Now with respect to expressed preemption, FFRA does not expressly preempt Dr. Carson's claims because Georgia's duty to warn law is consistent with or parallel to FFRA. In Bates v. Dow AgriSciences, which is 544 U.S. 431, 2005, Supreme Court determined that for preemption to apply, there's a two-prong test and so the state law must be a requirement for labeling or packaging. I don't really think that's much of a dispute here. We think that clearly Dr. Carson's failure to warn claim falls within that particular prong. But it also must impose a labeling or packaging requirement that is in addition to or different from those required under FFRA. If you look at the language of the complaint, the complaint which specifies a failure to warn claim does not go into any great detail about Georgia requirements with respect to labeling or packaging. It's very broad based and under Georgia law, as the district court pointed out, a duty to warn is when the manufacturer knows or reasonably should know of the dangers arising from the use of its product. So it's very broad and we would contend is consistent with fully consistent with FFRA. FFRA requirement on the other hand says that a label may be a warning or cautionary statement which may be necessary and if complied with together with any requirements imposed under Section 136 AD is adequate to protect health and environment. So it's our position that Dr. Carson's state law failure to warn claim parallels or is narrower than FFRA's disbranding requirement. If anything, this particular law in Georgia, this failure to warn claim arises under simply seeks to enforce compliance with FFRA and federal requirements. Now, it's our position that the lower court incorrectly determined that Dr. Carson's failure to warn claim which asserted that Monsanto failed to provide adequate warnings or other clinically relevant information and data regarding the risks associated with Classifies glyphosate as not likely to be carcinogenic to humans and considers glyphosate products with cancer warnings to be misbranded. But under Bates, while FFRA preempts states from imposing labeling requirements that are different or in addition to FFRA, it leaves states free to establish additional remedies for violating FFRA's misbranding provision. In fact, this exact issue was addressed by the Eleventh Circuit back in 2004 and 2005 of Liam Moots Judge Choflat on the Okin versus Monsanto case where there was a finding by this court that the FFRA preempted any sort of state law claims. That case was appealed and there was petition to the Supreme Court of the United States which in turn remanded this case back to the Eleventh Circuit to further determine whether under Bates there would be a different ruling. The Eleventh Circuit then did remand this case back to the district court for some additional findings. But under Bates, it is clear which specifically addresses and distinguishes FFRA as opposed to other acts that talk about preemption. We believe that the going back to what I said earlier that EPA's registered pesticide use and approved pesticide labels no defense to any violation of FFRA or violation of state law claims. If EPA approves a label that lacks adequate warnings, the pesticide is misbranded. It can be misbranded and also have an EPA approved label. And it does not in this case immunize Monsanto from liability not only for violation of FFRA but also for state law claims. Put another way, EPA approval does not satisfy those federal requirements. In fact, every circuit to consider this question is in agreement. EPA approval of a pesticide label does not preempt parallel warnings claims. There's Shonifer v. McClaskey which is a Tenth Circuit case 2017. There's also Indian Brand Inc. v. Novartis which is a Third Circuit case 2010. So with respect to FFRA, it's our position that a common law claim can coexist with a violation of FFRA and FFRA would not preempt that claim. Monsanto cannot identify any appellate decision state or federal that disagrees with the all of the current rulings of appellate courts in the nation. The finding that state law claims can coexist with violations of FFRA is essentially uniform. With respect to the implied preemption argument, there's again no split of authorities to whether federal law impliedly preempts such claims. All courts agree that it doesn't. In fact, if you look at the text of FFRA, it forecloses any inquiry into implied preemption. Counsel, let me ask you a question if you don't mind. I follow the Hardeman analysis. It makes sense logically. On the other hand, we do have this letter from EPA that says you can't put statements on that you would want to have put on or that would be misbranding. And I understand your position is, well, that's not a requirement because the law doesn't require it because it didn't go through the process. It's just an informal letter. But what would the recourse for Monsanto be? Let's say that Monsanto put the label on that you desire. And then now it's got this issue with EPA. What is the answer to that? I think that, first of all, the OPP letter that you speak of does not have the force of law. So it's not published in a federal register. It wasn't part of a formal proceeding. I think that so as to not be misbranded, they can put the appropriate warning that it may cause cancer as carcinogenic in humans. And that way, that would immunize them from that liability. Now, you're saying just because it doesn't have the force of law that even though EPA said we would find this to be misbranding, it really doesn't hold any water and their recourse would be in an enforcement action, I guess, by EPA? Potentially. You know, I think the problem, too, with the OPP letter is that it's for glyphosate only and does not specifically address Roundup, which is glyphosate plus toxic chemicals. So, you know, that's an issue that they have. But what we're looking at is whether claims can be maintained, both, you know, state law claims and violations of FFRA, and if those can coexist. Thank you, counsel. Thank you. I'm sorry. I think you have reserved some time for rebuttal. Yes, I have. All right. Very good. Thank you. Thank you. Mr. Zients? Thank you, Your Honors, and may it please the Court. With your permission, I think I would start where Judge Rosenbaum's question left off, and I think, you know, in this case, it can be easy to, you know, lose the forest for the trees. But, you know, the fundamental issue here is EPA has determined over and over again that glyphosate, in its view, does not cause cancer. And EPA has the ultimate control over the federal label. You cannot put a warning, a safety warning, on a glyphosate pesticide without getting EPA to agree to do that. And EPA, under its view of the science, not only would not, it could not allow that to be put on the label. In order to approve a label, this is Section 136CA5, EPA actually has to make a determination that the label complies with all applicable requirements. That includes misbranding, and that includes the definition of misbranding that says that the label must have all necessary and safety warnings adequate to protect the public health. So, you know, fundamentally, what's happening is the demand here, the allegation is that there should have been a warning on the label of this product saying that glyphosate causes cancer. Monsanto can't do that because of requirements that EPA has laid down under FFRA. What about your friend's argument over here that it doesn't, that Monsanto doesn't have to say that glyphosate can cause cancer. It needs to say that Roundup, in its formulation, can cause cancer. Sure. I think, you know, a couple points that, you know, one would be, I think that the plaintiff in this case does not press that theory. The complaint at paragraph 83 says specifically the active ingredient glyphosate is what the warning needed to be. And I think, you know, in the district court, there was no response to our preemption argument that, well, you could have given a Roundup warning instead of a glyphosate warning. But if you put that aside, what EPA said in the comments in its recent interim registration review decision in 2020, this was actually raised in the comments and a comment, you know, this is a formal procedure notice and comment that leads to these agency decisions, registration decisions, and, you know, a commenter had raised the question, well, what about these potentially hazardous surfactants or other inert ingredients? And what EPA says there, this is addressed, making a footnote in our brief, the EPA said in response, no, we look at the inert ingredients. And EPA has approved not just glyphosate, it has approved all registered uses of glyphosate. Now, of course, you know, there's no such thing as kind of pure glyphosate on the market. It is always in a formulation. So I don't think that would make any difference here. So let me ask you a question. Let's say that, and I know you don't agree that it's not a requirement, that letter, but let's just assume for purposes of this question that the letter is not a requirement because it is not the law, I guess. Then my question for you is if there were, and I position is there isn't, but if there were irrefutable evidence that glyphosate causes cancer, what are you saying, well, I guess the question is, under the Hardiman analysis, of course, the Hardiman analysis would find that there's no preemption issue. And I guess you all would have to then put that on your label. How would you address that with respect to the EPA? I think, you know, the answer of, you know, what if there was irrefutable evidence? I think Congress made the decision that the arbiter here is supposed to be EPA. EPA, you know, is, you know, delegated the responsibility by Congress to make a determination about whether the label has all safety warnings necessary to protect the public health. So I think... I understand, but I'm just saying, hypothetically, there's irrefutable evidence. I think if there were irrefutable evidence, you know, I think the company would go to EPA and say there's irrefutable evidence that this safety issue exists and we'd like to be able to warn about it on our label and, you know, EPA would then decide. And presumably if the evidence were really irrefutable, the EPA would say yes, but that's obviously why that's not this case. Okay. And I understand. I realize this is kind of a far-fetched hypothetical, but I'm just trying to play out sort of the logical consequences here. So under those circumstances, if EPA, for whatever reason, didn't get around to changing its mind as a matter of law, I guess, then states would not be able to, under your analysis, would not be able to require Monsanto to put that warning in their label, even if there were irrefutable evidence of the cancer-causing ability of a product, for example, glyphosate. Your Honor, if a company had gone to EPA and said there's really irrefutable evidence, please let us put it on the label, and EPA just doesn't act, then there's really no way to amend the label. Now, what a state can do under FIFRA, a state can ban the product. You know, the way FIFRA is structured is it puts EPA with primacy over the labeling. It does reserve to the states the ability to ban a product. So, you know, if the state of Georgia were to make a decision that Roundup shouldn't be sold in Georgia, and you want it to be accountable to its voters about whether that is good policy or bad policy, Congress allowed that to the states. What it did not allow the states to do is to impose labeling requirements that are different from or in addition to the federal requirements. Thank you, counsel. So, your Honor, in terms of thinking about what the applicable federal requirements are, I think the place to start and analyze that is the Supreme Court's decision in Regal v. Medtronic, which the Supreme, that concerns the medical devices amendments, but the Supreme Court has that as a similar preemption provision. It's also in addition to or different from federal requirements under a statute. And the analysis in Regal, it really directly applies here. What the Supreme Court said was that when a medical device goes through an FDA process called premarket approval, that process entails safety review. And when EPA has approved that, sorry, with that safety review, the result is that parties have to manufacture the product consistent with the approved specifications. So, the statute itself refers to requirements under this chapter, under the MDA. Interpreting that, the Supreme Court said that FDA's approval process imposes federal requirements for purposes of that preemption provision. And I think the analysis applies exactly the same way here. EPA, in order to register a pesticide, has to consider safety risks. In particular, it has to consider cancer risk. And it has to make a determination that the label includes all necessary warnings. Now, when the label goes through that process, when the product is registered through that process, just like in Regal, the result is a federal requirement under FFRA to use that label that the EPA approved and that the EPA said had all necessary safety warnings. I think the main response that we've heard on that from Ms. Madison, the response that the Ninth Circuit gave in the Hardeman case was, what all comes down to this other provision, Section 136 AF2. And I think that's, you know, it's helpful to kind of, you know, crystallize that point because I think there's a general recognition that if you just had the express preemption language in FFRA, and if you gave it a construction that it would be the same as, you know, other versions of that language, you would have, you would look to EPA's specific application of federal law here and recognize EPA's imposing requirements. So the question is, does Section 136 AF2 require, you know, FFRA's express preemption provision, does it take it in a completely different direction? I'd like to make three points about that. The first one, and maybe the easiest to stop with, is if you look at the text of Section 136 AF2, it does not talk about preemption. It does not about state law. It says that registration of a pesticide is not an offense, a defense, to an offense under FFRA. And the Fifth Circuit in the McDonald versus Monsanto case interpreted that. It said, you know, that is talking about enforcement that has, quote, no bearing on preemption. We think that's right, just a matter of the plain text of Section 136 AF2. And I think that the Ninth Circuit did not address, you know, that specific issue or the McDonald case from the Fifth Circuit. Second, even if you were to, you know, allow that Section 136 AF2 might have some bearing on the preemption analysis, it speaks only of registration. We are not claiming that the bare fact of registration creates the federal requirements that preempt state law. We could not argue that in light of Bates where, you know, that was a case where it really was just the registration that was argued to be the basis for preemption. The reason for that, the claim in Bates concerned an alleged efficacy issue. And as the Supreme Court explained, EPA had waived review of efficacy issues such that EPA had just never made a determination about the efficacy issue that was before the court. What we have here is not a claim that the registration, just the fact that EPA has registered the products imposes federal requirements, that the requirements here come from the agency's approval of the label for glyphosate and specifically the safety warnings. And unlike efficacy, EPA very much does have to and does in fact conduct a rigorous safety review to determine what safety warning should be on the product. Well, I thought your argument was beyond that, that they actually did do extensive research. Yeah, absolutely, Your Honor. And I think, you know, not only does EPA have to do that, EPA, we know that EPA has done that over and over and again. And, you know, I think we can talk about the force of law issue when you look at this formal process that EPA undergoes. And I think, you know, I think the 2019 letter is helpful, but, you know, to Your Honor's earlier question, by no means the only thing we can point to or rely on over the course of decades, EPA has followed the procedures enacted by Congress. It has created, you know, Congress created these registration procedures for the agency to do the safety analysis, to make these labeling determinations. You know, EPA has produced pages upon pages of rigorous scientific analysis, leading to its conclusion that glyphosate does not cause cancer. And that's what we are relying to, we're relying on. We are relying on not the fact that this was registered, or like in Bates, you know, the simple fact that a product was registered, where EPA says we're not even going to look at the claims you make about efficacy. This went through a formal agency process, where the agency has made a determination that glyphosate does not cause cancer, and that produces requirements under the analysis that we just went through. And one just last point to make on Section 136 AF2 is maybe a more structural point, which is these are two separate provisions. When Congress was dealing with the interaction between federal law and state law here, you know, it had a preemption provision about that. Section 136 AF2 is in a different part of the statute. In fact, when you look at the history of, you know, the first version of this idea of registration shall not be a defense against an offense under FFRA, that predates any preemption provision by about 25 years. It comes from a completely different regime, when at the time, you know, a registrant could go to the Secretary of Agriculture, who might think this product violates all kinds of requirements, but the Secretary actually had to approve it. And at that time, you know, sort of clarified that, yeah, you can have your registration, but that's not a defense if the government comes after you for violating FFRA. And that's, you know, stayed along in the statute, and we think it plays a role in the statutory scheme, but it would be a really surprising place to basically, you know, govern how the relationship between EPA's decisions under FFRA and state law would function. Your Honor, on Bates, which we've discussed, I think, you know, Dr. Carson proposes a sort of high level, you know, just look at the elements of the state law failure to warn, just look at the broad duty to provide necessary and adequate warnings under FFRA. What Bates said is that it's not enough to have nominal equivalence, and I think that's what this kind of look at the elements on side, look at the elements on the other side approach would do. There needs to be genuine equivalence, and in the Supreme Court in Bates, you know, it didn't stop there. It explained what it meant by genuine equivalence, and it gave this example of a warning where EPA says there should be a caution statement on the label, and a state might say, no, we think a more severe danger warning is possible. And the Hardiman Court kind of brushed that aside and said, well, there's regulations on that. There's regulations that define the toxicity categories to tell you which category a pesticide goes into. But what the regulations don't say is whether any specific pesticide belongs in one category or the other. That happens in the registration process created by Congress, the exact same registration process where the agency made the determinations we are talking about. I wanted to touch on the Rigel case. Finding that Dr. Carson's claims were not preempted would be consistent with the Rigel case. And Rigel, the Supreme Court found that the state law claims that the plaintiff had asserted were preempted, and that was primarily on the basis that those New York state laws or duties, according to the court, constituted requirements that would have been in addition to or different from those requirements under the MDA. That is different than what we have here. Here, with Georgia's, you know, duty to warn law and the requirements with respect to labeling or to packaging that Dr. Carson is asserting that should have been done or that Georgia law requires. So in Rigel, the FDA had given premarket approval for the device, and that was essentially it in terms of establishing that state law claims were preempted. The MDA does not have a provision like FIFRA has wherein the registration is not a defense to an offense or a violation of FIFRA. So Monsanto argues that FIFRA should apply in the context, or not FIFRA, that Rigel should apply and sort of be couched into this analysis in Rigel, but essentially without having that defense, I think that it would be trying to put essentially a square peg into a round hole and just really would not necessarily make sense here. And besides, we have Bates, and Bates has already established that FIFRA allows for state law claims, that the text of FIFRA essentially forecloses any possibility of preemption. Regardless of what Monsanto argues in the chat on, Bates is controlling here. Bates has identified that state law claims, so long as they are parallel or consistent with FIFRA, FIFRA can survive. I wanted to also go back to impossibility preemption. We did talk about the OPP letter as a basis for Monsanto arguing preemption, but also they've articulated impossibility preemption, and Your Honor, I believe, touched on this that, you know, if Monsanto wanted to actually establish that impossibility preemption applied here and wanted to try to invoke this properly, they would show that they tried to get, they tried to amend their label, they tried to get their label, that it was not approved, and that for that purpose, impossibility preemption may apply. We contend that it is not under Bates, but in any event, Monsanto has that burden. Monsanto has not made that showing, and so it's our position impossibility preemption does not apply here. Just to talk about, in sum, one of the other issues that was raised in one of the supplemental reports, that perhaps the EPA's decision to waive review of that subject label was a basis for a finding of no preemption. I would submit to Your Honors that there is absolutely no distinction outlined by the Supreme Court in terms of whether pursuant to a decision to waive approval of a label, a review of a label or not, is really of no consequence here, and so I think that is essentially a red herring. Even in light of the fact that the EPA waived review of that subject label, I don't think causes a different outcome here with EPA actually approving this particular label. In sum, I think under Bates, really only one outcome is proper, and that would be that the state law claim is not only allowed to proceed along with a violation of FFRA, but is in fact consistent with the principle as established in Bates, and we would ask that the court reverse the lower court's ruling in dismissing the failure to warn claim. Thank you, counsel. Thank you. Thank you all. Appreciate the arguments today. All right, our next case...